UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MARIA TERESA MARTINEZ VILLADA,
On behalf of herself, FLSA Collective Plaintiffs and
the Class Members,

Plaintiffs,

-against-

.
GRAND CANYON DINER, GRAND CANYON BISTRO
GRAND CANYON RESTAURANT, ROBERT OJEDA,
BERNARDO MARTINEZ, CESAR RENDON,
GONZALO CARRETO, and ALFREDO TAPIA,

Defendants.

-----------------------------------------------------------------X

Docket No.: 22-CV-2782
**VERIFIED COMPLAINT**

Jury Trial Demanded

Plaintiff MARIA TERESA MARTINEZ VILLADA (hereinafter, "Plaintiff" or "VILLADA "), on behalf of herself and other similarly situated employees, by and through her undersigned attorneys, PERVEZ & REHMAN, P.C., files this Complaint against Defendants, GRAND CANYON DINER (hereinafter "DINER") GRAND CANYON BISTRO ("BISTRO"), GRAND CANYON RESTAURANT ("RESTAURANT") (collectively "CORPORATE DEFENDANTS), ROBERT OJEDA ("OJEDA"), BERNARDO MARTINEZ ("MARTINEZ"), CESAR RENDON ("RENDON"), GONZALO CARRETO ("CARRETO"), and ALFREDO TAPIA ("TAPIA") (collectively "INDIVIDUAL DEFENDANTS") and states as follows:

## INTRODUCTION

1. This is a civil action for claims of sex-based discrimination, retaliation and the unlawful employment practices and to provide appropriate relief to PLAINTIFF, who was adversely affected by these actions. The PLAINTIFF's claims herein arise under Title VII of the Civil

Rights Act of 1964, the New York State Human Rights Law, N.Y. Exec. L. § 296 et seq., (hereinafter "New York State Human Rights Law" or "NYSHRL"), Intentional Infliction of Emotional Distress, Negligent Hiring and Supervision.

2. Plaintiff also alleges that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. § 201, *et. Seq.* ("FLSA"), she is entitled to recover from the Defendants: (1) unpaid wages; (2) unpaid overtime compensation; (3) liquidated damages; (4) prejudgment and post-judgment interest; and (5) attorneys' fees and costs.

3. Plaintiff further alleges that, pursuant to the New York Labor Law, he is entitled to recover from the Defendants: (1) unpaid wages; (2) unpaid overtime compensation; (3) unpaid "spread of hours" premium for each day they worked in excess of ten (10) hours; (4) failure to issue wage statements; (5) liquidated damages; (6) prejudgment and post-judgment interest; and (7) attorneys' fees and costs.

## **JURISDICTION AND VENUE**

4. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in the Eastern District pursuant to 28 U.S.C. §1391 because the conduct making up the basis of the complaint took place in this judicial district.

6. Plaintiff has satisfied all conditions precedent to the institution of this action, or such conditions have been waived.

## **PARTIES**

7. At all times relevant to this action, MARIA TERESA MARTINEZ VILLADA

("VILLADA") is a female who resided in the Kings County, State of New York.

8. At all times relevant to this action, DEFENDANT, GRAND CANYON DINER ("DINER"), is a domestic corporation engaged in business in the State of New York with a principal place of business at 179 7th Ave, Brooklyn, NY 11215.

9. At all times relevant to this action, DEFENDANT, GRAND CANYON BISTRO ("BISTRO"), is a domestic corporation engaged in business in the State of New York with a principal place of business at 300 Schermerhorn St., Brooklyn, NY.

10. At all times relevant to this action, DEFENDANT, GRAND CANYON RESTAURANT ("RESTAURANT"), is a domestic corporation engaged in business in the State of New York with a principal place of business at 143 Montague St., Brooklyn, NY.

11. At all times relevant to this action, CESAR RENDON ("RENDON") is a resident of Kings County, State of New York, and an owner and officer, director, shareholder, manager, and proprietor of CORPORATE DEFENDANTS.

12. At all times relevant to this action, GONZALO CARRETO ("CARRETO") is a resident of Queens County, State of New York, and an owner and officer, director, shareholder, manager, and proprietor of CORPORATE DEFENDANTS.

13. At all times relevant to this action, ALFREDO TAPIA ("TAPIA") is a resident of Queens County, State of New York, and an owner and officer, director, shareholder, manager, and proprietor of CORPORATE DEFENDANTS.

14. At all times relevant to this action, ROBERT OJEDA ("OJEDA") is a resident of Kings County, State of New York and an employee of the DINER, BISTRO and RESTAURANT.

15. At all times relevant to this action, BERNARDO MARTINEZ ("MARTINEZ") is a resident of Kings County, State of New York and an employee of the DINER, BISTRO and

RESTAURANT.

16. At all relevant times to this action, RENDON, CARRETO and TAPIA (hereinafter "INDIVIDUAL OWNERS") and CORPORATE DEFENDANTS employed PLAINTIFF.

17. Upon information and belief, INDIVIDUAL OWNERS are the owners and officers, directors, shareholders, managers, and proprietors of the RESTAURANT, BISTRO and DINER ("CORPORATE DEFENDANTS") and actively participated and continue to actively participate in the day-to-day operations of the CORPORATE DEFENDANTS, and acted intentionally and maliciously and is employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and are jointly and severally liable with CORPORATE DEFENDANTS.

18. At all relevant times, CORPORATE DEFENDANTS were, and continue to be, an "enterprise engaged in commerce" within the meaning of the FLSA in that it (i) has and has had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) has and has had an annual gross volume of sales of not less than $500,000.

**FACTUAL ALLEGATIONS**

19. At all relevant times herein, CORPORATE DEFENDANTS and INDIVIDUAL OWNERS are employers within the meaning of all relevant statutes.

20. CORPORATE DEFENDANTS and INDIVIDUAL OWNERS committed the acts alleged in this Complaint knowingly, intentionally, and willfully.

21. Upon information and belief, the INDIVIDAUL OWNERS, RENDON, CARRETO, and

TAPIA are officers, directors, shareholders, managers, and proprietors all three CORPORATE DEFENDANTS, BISTRO, DINER and RESTAURANT.

***Integrated Enterprise/Joint Employer Facts***

22. The INDIVIDUAL OWNERS own all of the CORPORATE DEFENDANTS and operate them as one integrated enterprise that shares resources, employees, and supplies.

23. The INDIVIDUAL OWNERS used these locations to run the operations of the DINER, BISTRO and RESTAURANT which included, but was not limited to tasks related to payroll, finances, human resources, and inventory management.

24. The CORPORATE DEFENDANTS and INDIVIDUAL OWNERS shared employees and routinely scheduled employees who worked mainly in one location to shifts in other locations both on a regular basis and to cover for unexpected absents.

25. For example, non-party Julio Ozuna (an employed cook) worked five (5) days at the DINER in the evenings and during the mornings, he would work at the BISTRO.

26. Another employee, “Santiago”, worked Thursday and Friday at the RESTAURANT or BISTRO but Saturdays through Wednesdays worked at the DINER.

27. Not only do the CORPORATE DEFENDANTS share employees, distributors, owners, menu but they often discussed business matters for all three locations together at the various locations.

28. The INDIVIDUAL OWNERS operated the businesses as one enterprise, scheduling employees at the various locations as their business needs dictated.

29. The DEFENDANTS shared resources and operational structures in a manner that is indicative of a single enterprise.

30. While Plaintiff worked at the DINER, because of the amount of control

INDIVIDUAL OWNERS AND CORPORATE DEFENDANTS exerted over her working conditions and because of the integrated nature of the CORPORATE DEFENDANTS' operations, all of the Corporate Defendants and INDIVIDUAL OWNERS were Plaintiff's joint employers and are, collectively, a single integrated enterprise.

***Plaintiff's Employment***

31. PLAINTIFF was employed by INDIVIDUAL OWNERS AND CORPORATE DEFENDANTS in October 2019 until about May 2021 when she was constructively discharged.
32. At all times relevant herein, PLAINTIFF was employed by the INDIVIDUAL OWNERS and CORPORATE DEFENDANTS, beginning in October 2019.
33. PLAINTIFF worked as a cashier at the Diner.
34. PLAINTIFF's job duties included balancing the cash register at night when the Diner closed, and some mornings during opening.
35. PLAINTIFF was responsible for inventory, telephone orders, packed "to-go" orders, took phone orders, and was responsible for monetary charges at the register. She also had to clean up the coffee machine, computer area, bread and bakery areas, ice cream and meat freezer, and other areas of the restaurant. Sometimes PLAINTIFF also helped the busboys clean the tables.
36. At all times relevant herein, OJEDA was a co-worker of the PLAINTIFF, and was also employed by CORPORATE DEFENDANTS AND INDIVIDUAL OWNERS. OJEDA was scheduled to work at the DINER, beginning in September 2020.

37. At all times relevant herein, MARTINEZ was a co-worker of the PLAINTIFF and was also employed by CORPORATE DEFENDANTS AND INDIVIDUAL OWNERS. MARTINEZ was scheduled to work at the DINER beginning in on or about August 2018.

38. TAPIA is one of the owners of the DINER and PLAINTIFF'S supervisor.

***<u>Plaintiff Was Subjected to Discrimination</u>***

39. PLAINTIFF is a female.

40. On or around September 2020, OJEDA had made numerous grotesque "jokes" to PLAINTIFF involving their "intimate body parts."

41. Around the same time period, OJEDA asked the PLAINTIFF "how [she] liked to have sex."

42. PLAINTIFF ignored the repeated and unwelcome sexual remarks.

43. OJEDA's behavior persisted.

44. Soon after, OJEDA and MARTINEZ verbally harassed PLAINTIFF. Both made comments to the PLAINTIFF that they liked her pants because they are nice and tight and made the PLAINTIFF's "ass and legs look good."

45. PLAINTIFF pleaded with them to stop the lude comments because they made her uncomfortable and that they were degrading.

46. They responded by saying "all women are sluts and deserve only the worst treatment."

47. OJEDA frequently called PLAINTIFF "Coscorria." A slur in Spanish which translates to the equivalent of "scum of the earth." He used this slur against her almost every time he saw her.

48. ORJEDA and MARTINEZ told PLAINTIFF that she, and all women deserve to be mistreated and sexually harassed. They also told her that she, and other women, like to be mistreated.

49. MARTINEZ frequently would walk past PLAINTIFF at the DINER and grope her.

50. When PLAINTIFF confronted MARTINEZ about this, he would say that it was an accident or that it never happened at all and call PLAINTIFF crazy.

51. ORJEDA began taking the same train as PLAINTIFF to get to the DINER with her. He did this after he saw her getting off at the 7th Avenue stop. This would be the Q or B train toward work or on the way home, toward Coney Island. While they waited at the train station, he began making harassing comments and would grab her hands and make unwelcome compliments.

52. PLAINTIFF pled him to stop harassing her and ORJEDA claimed that it was just a game.

***Retaliation***

53. On March 2021, PLAINTIFF reported the aforementioned instances, among other, to TAPIA, one of the owners of the DINER.

54. TAPIA informed the Plaintiff that he would have a conversation with ORJEDA and MARTINEZ about this.

55. PLAINTIFF was provided no evidence or given no reason to believe that a "conversation" actually occurred.

56. After the "conversation" the harassment endured by the PLAINTIFF escalated in retaliation for reporting the behavior.

57. On or about June 6, 2021, OJEDA, physically attacked the PLAINTIFF at the workplace. OJEDA grabbed PLAINTIFF by the hair, ripping her head downward with extreme force.

58. PLAINTIFF screamed to stop and he responded "you know that you like when I treat you like this."

59. After this attack, PLAINTIFF filed a police report.

60. PLAINTIFF complained to her employers, but CORPORATE DEFENDANTS and

INDIVIDUAL OWNERS failed to investigate or remedy the hostile work environment.

61. Since that attack, PLAINTIFF has been suffering from depression, insomnia and severe anxiety due to the attack.

62. After this attack, PLAINTIFF had no choice but to leave. She was constructively discharged.

63. PLAINTIFF filed a charge with the EEOC and received a Right to Sue letter dated February 18, 2022.

***<u>Wage and Hour Facts</u>***

64. PLAINTIFF worked for CORPORATE DEFENDANTS and INDIVIDUAL OWNERS as an hourly, non-exempt employee.

65. CORPORATE DEFENDANTS and INDIVIDUAL OWNERS were Plaintiff's employers.

66. Her direct supervisor was DEFENDANT TAPIA.

67. All CORPORATE DEFENDANTS and INDIVIDUAL OWNERS, including DEFENDANT TAPIA were responsible for hiring, setting her work schedule, pay, and all other personnel matters.

68. From October 2019 through March 2020, PLAINTIFF worked approximately sixty (60) to sixty-six (66) hours per week.

69. PLAINTIFF was paid $15 per hour for the first 40 hours worked on check.

70. For any hours worked over forty hours in any given week, which varied between fifteen (15) and eighteen (18) hours of overtime a week, PLAINTIFF received cash payments at a straight time rate, not the required time and a half.

71. PLAINTIFF worked 11 a.m. to 10 p.m. six days a week.

72. During the Pandemic (mid-March 2020 through July 2020), PLAINTIFF worked four (4) days a week, from 7 a.m. to 10 p.m. and was denied overtime pay.

73. Once the CORPORATE DEFENDANTS increased their operating hours as COVID

restrictions loosened, PLAINTIFF'S schedule changed. She worked Wednesday through Thursday, 3 p.m. to 10/11 p.m., Friday and Saturday from 11 a.m. to 10/11 p.m., and Sunday 1 p.m. to 10 p.m.

74. PLAINTIFF often had to stay past closing to help get out final orders and clean up.

75. Her hours decreased to about forty-five (45) to forty-seven (47) hours per week, but she was still denied time and a half overtime pay for any hours worked over 40.

76. PLAINTIFF was not required to clock in and out or sign a time sheet. She was not given spread of hours pay for any day she was scheduled to work over ten (10) hours.

77. Upon information and belief, CORPORATE DEFENDANTS and INDIVIDUAL OWNERS had a common pay and time practice and policy in all of their locations.

78. CORPORATE DEFENDANTS and INDIVIDUAL OWNERS did not provide PLAINTIFF with written notice of her pay rate, as required by N.Y. Lab. L. § 195(1) or accurate wage statement in violation of N.Y. Lab. L. § 195(3).

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

79. PLAINTIFF brings this action individually and as a class representative PLAINTIFF on behalf of herself and all other current and former non-exempt employees who have been or were employed by CORPORATE DEFENDANTS and INDIVIDUAL OWNERS since 2016, to the entry of judgment in this case (the "Collective Action Period"), and who failed to receive minimum wages or overtime compensation at the rate of time and one-half for all hours worked in excess of forty (40) per week (the "Collective Action Members").

80. Upon information and belief, the collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts upon which the calculation of that number are presently within the sole control of the

CORPORATE DEFENDANTS and INDIVIDUAL OWNERS, upon information and belief, there are more than forty (40) Collective Action Members who worked for the CORPORATE DEFENDANTS and INDIVIDUAL OWNERS during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiff submits that this matter should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b).

81. Plaintiff VILLADA will fairly and adequately protect the interests of the Collective Action Members and has retained counsel that is experienced and competent in the fields of employment law and class action litigation. Plaintiff VILLADA has no interests that are contrary to or in conflict with those members of this collective action.

82. This action should be certified as a collective action because the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class, or adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members who are not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

83. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.

84. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

85. Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because CORPORATE DEFENDANTS and INDIVIDUAL OWNERS have acted on grounds generally applicable to all members. Among the common questions of law and fact common to PLAINTIFF and other Collective Action Members are:

a. Whether the CORPORATE DEFENDANTS and INDIVIDUAL OWNERS employed PLAINTIFF and the Collective Action Members within the meaning of the FLSA;

b. Whether the CORPORATE DEFENDANTS and INDIVIDUAL OWNERS failed to keep true and accurate time and pay records for all hours worked by PLAINTIFF and the Collective Action Members;

c. What proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

d. Whether the CORPORATE DEFENDANTS and INDIVIDUAL OWNERS failed to pay PLAINTIFF and the Collective Action Members minimum wages in violation of the FLSA;

e. Whether the CORPORATE DEFENDANTS and INDIVIDUAL OWNERS unlawfully failed to pay PLAINTIFF and the Collective Action Members overtime compensation at the statutory rate of time and one-half for all hours worked in excess of forty (40) per week in violation of the FLSA;

f. Whether the CORPORATE DEFENDANTS and INDIVIDUAL

OWNERS' violations of the FLSA are defined as willful within the context of the FLSA; and,

g. Whether the CORPORATE DEFENDANTS and INDIVIDUAL OWNERS are liable for all damages claimed hereunder, including but not limited to: compensatory, liquidated and statutory damages, interest, attorneys' fees, and costs and disbursements.

86. PLAINTIFF knows of no difficulty that will be encountered in management of this litigation that would preclude its maintenance as a collective action.

87. PLAINTIFF and others similarly situated have been substantially damaged by the CORPORATE DEFENDANTS and INDIVIDUAL OWNERS' wrongful conduct.

**RULE 23 CLASS ALLEGATIONS – NEW YORK**

88. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt persons employed by CORPORATE DEFENDANTS and INDIVIDUAL OWNERS on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

89. All said persons, including PLAINTIFF are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of CORPORATE DEFENDANTS and INDIVIDUAL OWNERS. The hours assigned and worked, the position held, and the rates of pay for each Class member may also be determinable from CORPORATE DEFENDANTS and INDIVIDUAL OWNERS' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from CORPORATE DEFENDANTS and INDIVIDUAL OWNERS. Notice can be provided by means permissible under FRCP

23.

90. The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a Class will benefit the parties and the Court. Although the precise number of such persons is unknown, because the facts on which the calculation of that number rests are presently within the sole control of CORPORATE DEFENDANTS and INDIVIDUAL OWNERS, there is no doubt that there are more than forty (40) members of the Class.

91. PLAINTIFF'S claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of CORPORATE DEFENDANTS and INDIVIDUAL OWNERS and CORPORATE DEFENDANTS and INDIVIDUAL OWNERS benefited from the same type of unfair and/or wrongful acts as to each Class member. PLAINTIFF and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures.

92. PLAINTIFF VILLADA is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. PLAINTIFF is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

93. A Class Action is superior to other available methods for the fair and efficient adjudication of the controversy - particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate Defendants. Class action treatment will permit a large number of similarly

situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a Class Action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a Class Action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a Class Action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications. With respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to fashion methods to efficiently manage this as a Class Action.

94. CORPORATE DEFENDANTS and INDIVIDUAL OWNERS and other employees throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class Actions provide Class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

95. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a. Whether CORPORATE DEFENDANTS and INDIVIDUAL OWNERS employed Plaintiff and the Class within the meaning of the New York law;

    b. What are and were the policies, practices, programs, procedures, protocols and plans of CORPORATE DEFENDANTS and INDIVIDUAL OWNERS regarding the types of work and labor for which Defendant did not pay the Class members properly;

    c. At what common rate, or rates subject to common methods of calculation, was and are CORPORATE DEFENDANTS and INDIVIDUAL OWNERS required to pay the Class Members for their works;

    d. Whether CORPORATE DEFENDANTS and INDIVIDUAL OWNERS provided PLAINTIFF and the Class with a spread time premium as required by NYLL; and

    e. Whether CORPORATE DEFENDANTS and INDIVIDUAL OWNERS properly notified Plaintiff and the Class Members of their hourly rate and overtime rate.

**<u>AS A FIRST CAUSE OF ACTION</u>**

**Title VII- Sexual Harassment**

96. PLAINTIFF repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as though fully set forth herein.

97. The DEFENDANTS intentionally discriminated against PLAINTIFF by creating and maintaining a sexually hostile work environment in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. §2000e et seq.

98. The sexually hostile work environment created by the DEFENDANTS was severe, pervasive and part of a pattern or practice of harassment against PLAINTIFF.

99. The hostile work environment altered the PLAINTIFF's conditions of employment by creating an abusive, physically threatening, humiliating, and intolerable working environment.

100. PLAINTIFF made numerous attempts to complaint about the sexual harassment she was subjected to, but DEFENANTS took no action to stop the sex-based, offensive, unwelcomed, unsolicited, and illegal behavior directed towards PLAINTFF.

101. The DINER, through and together with the INDIVIDUAL DEFENDANTS participated in the conduct giving rise to the harassment and hostile work environment that altered the terms and conditions of PLAINTIFF's employment.

102. As a direct and proximate consequence of the DEFENDANTS' intentional, unlawful, discriminatory treatment of PLAINTIFF, she has suffered and continues to suffer damages including, but not limited to, compensatory damages due to emotional distress and mental anguish.

103. By reason of the sexual harassment perpetuated by the DEFENDANTS, the PLAINTIFF is entitled to all damages available to her under Title VII.

**<u>AS A SECOND CAUSE OF ACTION</u>**

**New York State Human Rights Law – Sexual Harassment**

104. PLAINTIFF repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as though fully set forth herein.

105. NYSHRL (Executive Law § 296) provides that it shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of the age, race, creed, color,

national origin, sexual orientation, military status, sex, disability, genetic predisposition or carrier status, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

106. DEFENDANTS engaged in an unlawful discriminatory practice in violation of NYSHRL (Executive Law § 296) by actively and constructively taking adverse employment actions, creating and maintaining a sexually hostile work environment and discriminatory working conditions, and otherwise discriminating against the PLAINTIFF because of her sex and gender.

107. DEFENDANTS engaged in an unlawful discriminatory practice by taking adverse employment action and otherwise discriminating against the PLAINTIFF by engaging in sexual harassment.

108. The hostile work environment created by DEFENDANTS was severe and pervasive.

109. The hostile work environment altered the PLAINTIFFS' conditions of employment by creating an abusive, threatening, humiliating, and intolerable working environment.

110. PLAINTIFF complained about the sexual harassment she was subjected to, objected to, and removed herself from the abusive environment she found herself in.

111. DEFENDANTS took no action to stop the sex-based, offensive, unwelcomed, unsolicited, and illegal behavior that was directed towards PLAINTIFF.

112. DEFENDANTS, have the power to hire, fire, and alter the terms and working conditions of PLAINTIFF' employment.

113. The DEFENDANTS altered the terms and conditions of PLAINTIFF's employment.

114. DEFENDANTS failed to promptly investigate or take appropriate remedial measures despite being informed about the existence of discriminatory conduct.

115. That as a direct result of the foregoing, the PLAINTIFF is entitled to all damages available to them under New York State Human Rights Law.

## THIRD CAUSE OF ACTION

### Title VII – Retaliation

116. PLAINTIFF repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as fully set forth herein.

117. PLAINTIFF complained about the sexually hostile working environment to which she was subjected to.

118. DEFENDANTS retaliated against PLAINTIFF for engaging in protected activity of reporting and opposing the sexually hostile work environment to which she was being subjected to.

119. DEFENDANTS told PLAINTIFF that discipline would occur, yet the complained of behavior only became more egregious.

120. As a direct and proximate consequence of the DEFENDANTS' intentional, unlawful, discriminatory and retaliatory treatment of PLAINTIFF, has suffered and continues to suffer damages, including but not limited to, compensatory damages due to emotional distress and mental anguish.

121. PLAINTIFF is entitled to damages available under Title VII for the retaliation she endured.

## FOURTH CAUSE OF ACTION

**New York State Human Rights Law - Retaliation**

122. PLAINTIFF repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as though fully set forth herein.

123. PLAINTIFF complained about the sexually hostile working environment to which she was subjected to.

124. DEFENDANTS engaged in an unlawful and retaliatory practice in violation of the NYSHRL by taking adverse employment action and otherwise discriminating and retaliating against the PLAINTIFF.

125. PLAINTIFF complained about the sexually hostile working environment to which she was subjected to.

126. DEFENDANTS retaliated against PLAINTIFF for engaging in protected activity of reporting and opposing the sexually hostile work environment to which she was being subjected to.

127. DEFENDANTS told PLAINTIFF that discipline would occur, yet the complained of behavior only became more egregious.

128. As a direct and proximate consequence of the DEFENDANTS' intentional, unlawful, discriminatory and retaliatory treatment of PLAINTIFF, has suffered and continues to suffer damages, including but not limited to, compensatory damages due to emotional distress and mental anguish.

129. DEFENDANTS retaliated against PLAINTIFF for engaging in protected activities for reporting and opposing the sexually hostile working environment to which she was being subjected.

130. In violation of New York Executive Law § 296, DEFENDANTS retaliated against the PLAINTIFF in a way that interfered with the terms and conditions of PLAINTIFF's employment.

131. As a direct and proximate cause of DEFENDANTS' intentional, unlawful, discriminatory, and retaliatory treatment of PLAINTIFF, suffers and continues to suffer damages, including but not limited to, compensatory damages due to emotional distress and mental anguish.

132. By reason of the retaliation perpetrated by DEFENDANTS, PLAINTIFF is entitled to all damages available to them under New York State Human Rights law.

**FIFTH CAUSE OF ACTION**

**Infliction of Emotional Distress**

133. PLAINTIFF repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as though fully set forth herein DEFENDANTS engaged in extreme and outrageous conduct.

134. DEFENDANTS intended to cause, or disregarded a substantial probability of causing, severe emotional distress to PLAINTIFF.

135. There exists a causal connection between the above conduct and said injury.

136. As a result of said conduct PLAINTIFF suffered and suffers from severe emotional distress.

**SIXTH CAUSE OF ACTION**

**Negligent Hiring, Supervision, & Retention**

137. PLAINTIFF repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as though fully set forth herein.

138. As a result of DEFENDANTS gross negligence, PLAINTFF experienced, *inter alia,* sexual harassment, retaliation, physical harm, anxiety, and emotional distress.

139. Had DEFENDANTS taken reasonable care in making decisions concerning hiring, supervision and retention of ROBERT OJEDA and BERNARDO MARTINEZ, PLAINTIFF could have been spared the foreseeable harm she experienced.

140. DEFENDANTS should have known or knew of OJEDA and MARTINEZ's improper behavior and should have afforded PLAINTIFF an opportunity to complain without being constantly and consistently ignored.

141. As a direct and proximate result of the aforementioned conduct, perpetuated by DEFENDANTS, PLAINTIFF was damaged and suffered physical and emotional harm, anguish, anxiety and humiliation that continues today.

142. By reason of DEFENDANT's failure to exercise due care in hiring supervision, and retention of employees, PLAINTFF suffered sexual harassment and retaliation.

**SEVENTH CAUSE OF ACTION**

**Constructive Discharge**

143. PLAINTIFF repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though full set forth herein,

144. PLAINTIFF was constructively discharged based on her sex when she was subjected to DEFENDANTS' sexual harassment and hostile working environment and retaliation, though OJEDA and MARTINEZ.

145. Despite TAPIA knowing that PLAINTIFF had complained about the harassment she endured no action was taken to prevent the recurrence of it.

146. The working conditions resulting from DEFENDANTS' sexual harassment/hostile working environment and retaliation were so intolerable that a reasonable person in the respective employee's situation, such as the PLAINTIFF, would have been compelled to resign.

147. As a direct and proximate consequence of the DEFENDANTS' intentional, unlawful, discriminatory, and retaliatory treatment, which led to the constructive discharge of the PLAINTIFF, the PLAINTFF has suffered and continues to suffer damages, including but not limited to, compensatory damages due to emotional distress and mental anguish.

148. By reason of the retaliation perpetrated by DEFENDANTS, the PLAINTIFF is entitled to damages available under Title VII and New State Human Rights Law.

**EIGHT CAUSE OF ACTION**

**FLSA Overtime Violations, 29 U.S.C. §§ 201 *et seq.***

149. PLAINTIFF realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

150. PLAINTIFF routinely worked in excess of forty (40) hours per workweek.

151. CORPORATE DEFENDANTS and INDIVIDUAL OWNERS failed to

pay her one and a half times his regular hourly rate forall overtime hours worked, and they failed to keep records required by the FLSA and relevant regulations, even though Plaintiff was entitled to overtime.

152. PLAINTIFF seeks damages in the amount of her unpaid overtime compensation,liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees andcosts, and such other legal and equitable relief as this Court deems just and proper.

## NINTH CAUSE OF ACTION

### New York State Violations under NYLL

153. PLAINTIFF realleges and incorporates by reference all preceding paragraphs asif they were set forth again herein.

154. It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying overtime wages for all hours worked in excess of forty (40) hours in any workweek.

155. CORPORATE DEFENDANTS and INDIVIDUAL OWNERS willfully, regularly, and repeatedly failed to pay Plaintiff at the required overtime rate of one-and-one-half times her regular rate for hours worked in excess of forty (40) hours per workweek.

156. CORPORATE DEFENDANTS and INDIVIDUAL OWNERS willfully failed to pay spread of hours pay.

157. As a result of CORPORATE DEFENDANTS and INDIVIDUAL OWNERS' willful and unlawful conduct, Plaintiff is entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment

interest, and attorneys' fees and costs.

## NINTH CAUSE OF ACTION

**New York Notice Requirements, N.Y. Lab. L. §§ 195, 198**

158. PLAINTIFF realleges and incorporates by reference all preceding paragraphs asif they were set forth again herein.

159. CORPORATE DEFENDANTS and INDIVIDUAL OWNERS did not provide Plaintiff with a written wage notice or adequatewage statements as required by N.Y. Lab. Law § 195(1), (3).

160. As a result of CORPORATE DEFENDANTS and INDIVIDUAL OWNERS' unlawful conduct, Plaintiff is entitled to an awardof damages, including liquidated damages, in amount to be determined at trial, pre- and post- judgment interest, and attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff on behalf of herself, and FLSA Collective PLAINTIFFS and Class members, respectfully request that this Court grant the following relief:

A. Grant judgment against DEFENDANTS as to each and every cause of action herein alleged;

B. Grant judgment against DEFENDANTS for engaged in unlawful employment practice prohibited by federal, state common law, Title VII, NYSHRL;

C. Grant judgment against DEFENDANTS for harassing, discriminating against, taking adverse employment actions, and retaliating against a PLAINTIFF on the basis of her sex and gender and for taking an adverse employment action against PLAINTIFF, and for

retaliating against PLAINTIFF on the basis of her sex and gender and engaging in sexual harassment and hostile work environment;

D. Awarding damages to the PLAINTIFF for all lost wages and benefits resulting from DEFENDANTS' unlawful employment practices;

E. Designation of this action as a collective action on behalf of the FLSA Collective PLAINTIFFS and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA Collective, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

F. Designation of PLAINTIFF as Representative of the FLSA Collective PLAINTIFFS and Class Members;

G. A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States, FLSA and New York State laws;

H. All damages that PLAINTIFF and FLSA PLAINTIFFS have sustained as a result of the DEFENDANTS' conduct, including all unpaid wages and any short fall between wages paid and those due under the law that PLAINTIFF and FLSA PLAINTIFFS would have received but for the DEFENDANTS' unlawful payment practices including unpaid wages, minimum wages, overtime wages, spread of hours compensation among those alleged herein;

I. Liquidated damages and any other statutory penalties as recoverable under the FLSA and NYLL;

J. Awarding PLAINTIFF and FLSA PLAINTIFFS their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, other costs, and an award of a service payment to PLAINTIFFS;

K. Pre-judgment and post-judgment interest, as provided by law;

L. Costs and expenses associated with this action, together with reasonable attorneys' and expert fees; and,

Granting PLAINTIFF and FLSA PLAINTIFFS other and further relief as this Court finds necessary and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury as to all issues so triable.

Dated: Melville, New York
May 12, 2022

Respectfully Submitted,

**Pervez & Rehman, P.C.**
Attorneys for PLAINTIFF

/s/ Aneeba Rehman
By: Nadia M. Pervez, Esq.
Aneeba Rehman, Esq.
68 South Service Road, Suite 100
Melville, NY 11747

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MARIA TERESA MARTINEZ VILLADA,
On behalf of herself, FLSA Collective Plaintiffs and the Class Members,

Plaintiffs, Docket No.: 22-CV-2782

-against-

Jury Trial Demanded

GRAND CANYON DINER, GRAND CANYON BISTRO GRAND CANYON RESTAURANT, ROBERT OJEDA, BERNARDO MARTINEZ, CESAR RENDON, GONZALO CARRETO, and ALFREDO TAPIA,

Defendants.

-------------------------------------------------------------------X

**VERIFICATION**

STATE OF NEW YORK )
ss.:
COUNTY OF )

I, MARIA TERESA MARTINEZ VILLADA, am the Plaintiff in the within action for. I have read the foregoing Complaint and know the contents thereof. The contents are true to my own knowledge except as to matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

Teresa Martinez
MARIA TERESA MARTINEZ VILLADA

Sworn to before me on this 28th day of April, 2022.

[signature]
Notary Public

HAIMWATTIE SINGH
Notary Public, State of New York
Reg. No. 01S16089783
Qualified in Nassau County
My Commission Expires Mar. 31, 2023
04-28-2022

I, MARIA TERESA MARTINEZ VILLADA, am an employee formerly employed by Defendants . I consent to be a Plaintiff in the above-captioned action to collect unpaid minimum wages and overtime pay.

Teresa Martinez
MARIA TERESA MARTINEZ VILLADA

Sworn to before me on this 28th day
of April, 2022.

Notary Public

HAIMWATTIE SINGH
Notary Public, State of New York
Reg. No. 01S16089783
Qualified in Nassau County
My Commission Expires Mar. 31, 2023

04-28-2022