UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------X

MARIA TERESA MARTINEZ VILLADA, *on
behalf of herself and others
similarly situated in the proposed
FLSA Collective Action*,

     *Plaintiff*,     **MEMORANDUM & ORDER**

 - against –      22-CV-2782 (KAM)(RML)

GRAND CANYON DINER, GRAND CANYON
BISTRO, GRAND CANYON RESTAURANT,
HAPPY ONE RESTAURANT, INC., ROBERT
OJEDA, BERNARDO MARTINEZ, CESAR
RENDON, GONZALO CARRETO, ALFREDO
TAPIA, MARINELLA RENDON, and ANDREA
CARRETO,

     *Defendants*.

-----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

   Plaintiff Maria Teresa Martinez Villada ("Villada" or the

"Plaintiff"), who worked exclusively at Grand Canyon Diner,

brought this action against Defendants Grand Canyon Diner, Grand

Canyon Bistro, Grand Canyon Restaurant, and Happy One Restaurant,

Inc., d/b/a Mex Carroll's Diner (collectively, the "Corporate

Defendants"), Robert Ojeda ("Ojeda"), Bernardo Martinez

("Martinez"), Cesar Rendon ("C. Rendon"), Gonzalo Carreto ("G.

Carreto"), Alfredo Tapia ("Tapia"), Andrea Carreto ("A. Carreto"),

and Marinella Rendon ("M. Rendon") (collectively, the "Individual

Defendants"). (*See generally* ECF No. 33, Second Amended Complaint

("SAC").)  Plaintiff brings claims under (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); (2) the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq.; (3) the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-101 et seq.; (4) the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 201 et seq.; (5) the New York State Labor Law ("NYLL") § 190 et seq.; and (6) state common law.  (*Id.*)

Plaintiff now moves for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to Plaintiff's claims of (1) FLSA and NYLL overtime violations; (2) Title VII, NYSHRL, and NYCHRL hostile work environment; and (3) NYLL wage notice claims.  (ECF No. 43-1, Plaintiff's Memorandum of Law in Support ("Pl. Mem."), at 2.)  For the reasons stated herein, Plaintiff's motion for partial summary judgment is respectfully denied.

## **BACKGROUND**

### I.  **Factual Background**

The following facts are taken from the parties' Local Rule 56.1 statements and counter-statements, as well as from documents and transcripts cited in the parties' Local Rule 56.1 statements. (*See* ECF No. 43-4, Plaintiff's Statement of Undisputed Material Facts ("Pl. 56.1"); ECF No. 43-7, Defendants' Rule 56.1 Counter-Statement ("Def. Counter 56.1"); ECF No. 43-5, Defendants' Rule

56.1 Statement ("Def. 56.1"); ECF No. 43-6, Plaintiff's Reply to Defendant's Rule 56.1 Statement ("Pl. Reply 56.1").)   Except as otherwise indicated, the facts set forth below from the parties' Local Rule 56.1 statements are undisputed.   The court summarizes only those facts that are relevant and material to the adjudication of the instant motion and notes any material facts in dispute.

Plaintiff was employed at the Grand Canyon Diner from late August 2019 through June 6, 2021.   (Pl. 56.1 ¶ 6; Def. 56.1 ¶ 3.) The Grand Canyon Diner, located at 179 7th Ave. in Brooklyn, is owned by Defendants G. Carreto and M. Rendon[1], and is the location where Plaintiff worked and where her alleged claims arose.   (Def. 56.1 ¶ 1; ECF No. 47-1, Deposition of Gonzalo Carreto ("G. Carreto Dep."), at 14.)   It is undisputed that Plaintiff only worked for the Grand Canyon Diner and did not work at any of the other restaurants owned by G. Carreto.   (Pl. 56.1 ¶ 6.)   G. Carreto testified at his deposition that he and M. Rendon had been partners and co-owners of the Diner since it opened in 2013, and there had been no other partners in the business enterprise since that time. (G. Carreto Dep. at 11.)   M. Rendon testified at her deposition that three cooks, four dish washers, and four waiters were employed at the Grand Canyon Diner.   (ECF No. 48-2, Deposition of Marinella Rendon ("M. Rendon Dep."), at 10-11.)   Defendant A. Carreto, G.

---

[1] M. Rendon explained in her deposition that she was just an owner "on paper" and that she had never received any profits from the restaurant.   (M. Rendon Dep. at 12-14.)

Carreto's wife, worked at the Grand Canyon Diner part-time as a waitress for a limited number of days per week.  (ECF No. 48-1, Deposition of Andrea Carreto ("A. Carreto Dep."), at 7-9.)

The other Defendants are employed by or related to the Grand Canyon Diner and its two owners.  Defendants Martinez and Ojeda began employment as cooks at the Grand Canyon Diner in approximately 2018 and 2020, respectively, and were still employed at the time of their depositions for the instant case.  (Pl. 56.1 ¶¶ 2-3.)  Defendant C. Rendon is the husband of Defendant M. Rendon and has worked as a waiter at the Grand Canyon Diner since approximately 2020.  (*Id.* ¶ 4.)

The Grand Canyon Bistro is a separate restaurant at 300 Schermerhorn St. in Brooklyn which was opened in or around 2019 and is owned by G. Carreto, who holds a majority interest, and C. Rendon, who is a 20% owner.  (G. Carreto Dep. at 12-13.)  The Grand Canyon Restaurant is another restaurant owned by G. Carreto and C. Rendon, with the same ownership percentages, which was opened in 2018 and is located at 143 Montague Street in Brooklyn.  (*Id.* at 15.)  G. Carreto explained in his deposition that he is in charge of payroll, hiring and firing, setting schedules, and policies at all three restaurants.  (*Id.* at 15-17.)  G. Carreto further explained that although the same payroll company services all three restaurants, each location has a separate account with the payroll company.  (*Id.* at 18-19.)  G. Carreto explained that he keeps track

of employees' hours by writing them down on paper "every day" but throws those handwritten records away as soon as he does payroll. (*Id.* at 22.)

G. Carreto also owns Defendant Happy One Restaurant, Inc., which does business as (and is hereafter referred to as) "Mex Carroll's Diner" and is located at 192 Columbus Street in Brooklyn. (*Id.* at 34.)  G. Carreto testified at his deposition that he is the sole owner of Mex Carroll's Diner, and that it opened in 2012 or 2013.  (*Id.*)  A. Carreto is the manager of Mex Carroll's Diner. (A. Carreto Dep. at 7-9.)  Defendant Tapia is the brother of A. Carreto, and is employed as a bar back at the Grand Canyon Bistro. (ECF No. 47-2, Deposition of Alfredo Tapia ("Tapia Dep."), at 8-9, 19-20.)  Defendant Tapia denied having any role at the Grand Canyon Diner at his deposition and explained that he would only visit the Grand Canyon Diner to see his sister, A. Carreto, when she was at the restaurant.  (*Id.* at 19-21.)

The previously-stated facts are undisputed.  The parties vigorously dispute the facts that follow relating to Plaintiff's central claims against Defendants.  Plaintiff stated at her deposition that she was paid for 40 hours of work each week by check, and then then was paid for 20 hours extra "on the side in cash." (ECF No. 47-6, Deposition of Maria Teresa Martinez Villada ("Villada Dep."), at 8-9.)  Plaintiff further testified that she was working Monday through Saturday prior to the COVID-19 pandemic,

but that she only worked three days per week during the pandemic.
(*Id.* at 9-10, 31-32.) Plaintiff testified that her work schedule
picked back up after the pandemic, and that she was working "from
35 to 45 hours" per week after an unspecified date. (*Id.* at 10.)
Plaintiff stated that she was paid $15 per hour for all hours
worked, including those she worked in excess of 40 hours per week.
(*Id.*)

In contrast, G. Carreto testified at his deposition that no
employees, at any of his restaurants, are paid overtime, because
it is policy that they only work 40 hours or less. (G. Carreto
Dep. at 46.) M. Rendon also testified that no employees work over
forty hours at the Grand Canyon Diner. (M. Rendon Dep. at 14.)
G. Carreto testified that, with the exception of Martinez, all
employees are paid their hourly wages by check, and no employees
are paid wages in cash. (G. Carreto Dep. at 47-48.) Defendant
Martinez testified at his deposition that he worked 40 hours per
week "normally" and that he had never worked more than 40 hours in
a single week. (ECF No. 47-3, Deposition of Bernardo Martinez
("Martinez Dep."), at 8.) Defendants also produced payroll
reports[2] showing that Plaintiff worked 40 hours per week from
August 2019 to March 18, 2020; between 16 and 40 hours per week

---

[2] The payroll records were submitted in connection with the Pre-Motion Conference
held prior to Plaintiff's filing of the motion for summary judgment, but the
Court was unable to locate the payroll records in Defendants' submissions in
response to Plaintiff's Motion for Summary Judgment.

between March 18, 2020, and June 24, 2020; and between 29 and 40 hours per week between July 1, 2020, and December 31, 2020.  (ECF No. 36-4, Payroll Reports.)  The record before the Court does not contain any payroll reports showing Plaintiff's hours worked between January 1, 2021, and June 6, 2021.

Plaintiff testified in her deposition that her co-worker Defendant Ojeda would make "grotesque jokes" about Plaintiff and other women as well.  (Villada Dep. at 28.)  Plaintiff testified that her co-workers would make "bad jokes and other comments" and that they would be "touching [her] and touching [her] butt."  (*Id.* at 37.)  Plaintiff also testified that she was subject to a physical attack on June 6, 2021.  (*Id.* at 28-29.)  Plaintiff texted Tapia about the assault on June 9, 2021, explaining that she could "no longer go to work because on Sunday Mr. Roberto hit me physically and verbally."[3]  (Tapia Dep. at 62.)  Ojeda denied making inappropriate comments towards Plaintiff or touching her at his deposition.  (ECF No. 47-5, Deposition of Roberto Ojeda ("Ojeda Dep."), at 19.)  Ojeda also denied physically attacking Plaintiff

---

[3] Plaintiff has provided screenshots of the text messages, which are in Spanish, but has not provided a certified translation.  (ECF 43-9, Screenshots of Plaintiff's Text Messages with Defendant Tapia.)  The Court may not rely on untranslated documents.  *See Nam v. Permanent Mission of Republic of Korea to United Nations*, 657 F. Supp. 3d 382, 407 (S.D.N.Y. 2023) ("[untranslated] documents are therefore inadmissible under the well-established rule that a document in a foreign language is generally inadmissible unless accompanied by a certified English translation.") (internal quotation marks omitted) (collecting cases).  Instead, the Court will reference the text messages only to the extent they were read into the record by a translator at Defendant Tapia's deposition.

on June 6, 2021, in his deposition testimony. (*Id.* at 19-20.) Martinez similarly denied hearing Ojeda make inappropriate comments to Plaintiff and denied making jokes about Plaintiff with Ojeda. (Martinez Dep. at 21-22.) Plaintiff subsequently filed a police report alleging that Ojeda had assaulted her on June 10, 2021, at 7:40pm. (ECF No. 44-17, Exhibit A to the Perlman Declaration, at 3-4.) The police report notes in the narrative section that Plaintiff explained that Ojeda shoved and grabbed her by the head, but that no injury was sustained to Plaintiff. (*Id.* at 4.)

Plaintiff testified at her deposition that she told Tapia about her complaints of harassment. (Villada Dep. at 11-12.) Plaintiff testified that she complained about the harassment to Tapia on the phone in March of 2021, explaining that she told Tapia "they had been drunk, and they were trying to kiss me and touch me and hug me." (*Id.* at 18.) Plaintiff also made reference to her earlier complaints to Tapia in her June 9, 2021, text message, noting that "Bernard and Mr. Roberto" said that she was a "gossiper because of what [she had] accused." (Tapia Dep. at 62.) Tapia denied that Plaintiff ever spoke to him about any sexual harassment prior to the June 9, 2021, text message. (*Id.* at 63.) After receiving the text message from Plaintiff, Tapia explained that he showed it to his sister, A. Carreto, and her husband, G. Carreto.

(*Id.* at 64.)  Tapia explained that he did not know what actions G. Carreto and A. Carreto took subsequently.  (*Id.*)

During their deposition, G. Carreto and A. Carreto did not recall having any discussion with Tapia about Plaintiff's text messages.  (G. Carreto Dep. at 53; A. Carreto Dep. at 49.)  G. Carreto explained that when he received notice of Plaintiff's claims against Ojeda and Martinez, he asked the two cooks about the claims, but they said they didn't know anything.  (G. Carreto Dep. at 53-54.)  Neither Ojeda nor Martinez were ever disciplined following Plaintiff's complaint.  (Pl. 56.1 ¶¶ 62-63.)

## II.  Procedural Background

Plaintiff filed a complaint with the EEOC, and subsequently received a Right to Sue letter dated February 18, 2022.  (SAC ¶ 66.)  Plaintiff commenced this action against a majority of the Defendants[4] on May 12, 2022.  (*See generally* ECF No. 1, Complaint.)  Defendants Martinez, Ojeda, C. Rendon, and Tapia failed to appear or otherwise answer the original complaint, and Plaintiff subsequently moved for default judgment against that subset of Defendants on February 7, 2023.  (ECF No. 16, Motion for Default Judgment.)  Plaintiff also moved to amend the complaint on March 2, 2023, and leave to amend was granted by Magistrate Judge Levy on March 16, 2023.   (Docket Order dated March 16, 2023.)

---

[4] Excluding Mex Carroll's Diner, M. Rendon, and A Carreto.  (*See generally* ECF No. 1, Complaint.)

Plaintiff's First Amended Complaint included the originally-named Defendants along with additional Defendants Mex Carroll's Diner, A. Carreto, and M. Rendon.  (ECF No. 21, First Amended Complaint ("FAC").)  The newly-added Defendants waived service, and the same counsel appeared on behalf of all Defendants in answering the FAC on March 31, 2023.  (ECF Nos. 22-28.)  The Court subsequently denied Plaintiff's motion for default judgment without prejudice on May 1, 2023.  (Docket Order dated May 1, 2023.)

After the resolution of various discovery disputes, the parties certified the close of discovery on June 13, 2023, with the exception of medical records, which had been requested. (Minute Entry dated June 13, 2023.)  On consent, Plaintiff filed the SAC on June 19, 2023.  (*See generally* SAC.)  Plaintiff's SAC did not add any new Defendants and contained factual allegations identical to the FAC, but did add a tenth cause of action arising under the NYCHRL which had not previously been included.  (*Id.*) Defendants did not answer or otherwise reply to the SAC separate from their answers to the FAC.

Plaintiff moved for a pre-motion conference in anticipation of filing a motion for summary judgment on August 4, 2023, and the conference was held on October 26, 2023.  (Minute Entry dated October 26, 2023.)  The Court set a briefing schedule on November 22, 2023, after belatedly receiving a Rule 56.1 Counter Statement from Defendants.  (Docket Order dated November 22, 2023.)

Plaintiff filed the fully-briefed motion for partial summary judgment on February 15, 2024. (ECF Nos. 43-45.) The Court subsequently requested full copies of all deposition transcripts be filed on the docket, and Plaintiff complied with the Court's order by filing the transcripts on July 31 and August 1, 2024. (ECF Nos. 47-48.)

## LEGAL STANDARD

Plaintiff moves for partial summary judgment pursuant to Federal Rule of Civil Procedure 56, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. For a genuine issue of material fact to exist, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

In reviewing a motion for summary judgment, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d. Cir. 1996)); *accord Tolan v. Cotton*, 572 U.S. 650, 651 (2014) ("[I]n ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" (alteration in original) (quoting *Anderson*, 477 U.S. at 255)).

The moving party has the burden of establishing the absence of a genuine dispute as to any material fact, and in opposing summary judgment, the nonmoving party "need only present evidence from which a jury might return a verdict in his favor" to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 256-57. To meet this burden, however, a party opposing summary judgment must "come forward with specific facts showing that there is a *genuine issue for trial*," not merely "show that there is some metaphysical doubt as to the material facts." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting *Matsushita*

*Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

It is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines*, 239 F.3d 456, 466 (2d Cir. 2001). Nonetheless, the Second Circuit has "emphasized that trial courts must be especially chary in handing out summary judgment in discrimination cases, because in such cases the employer's intent is ordinarily at issue." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir. 1996); *see also Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 71 (2d Cir. 2000).

## DISCUSSION

Plaintiff seeks summary judgment as to her claims of (1) FLSA and NYLL overtime violations; (2) Title VII, NYSHRL, and NYCHRL hostile work environment; and (3) NYLL wage notice claims. (Pl. Mem. at 2.) Defendants argue in response that there are "many issues of fact at issue" which would preclude summary judgment. (ECF No. 44-16, Declaration of David Perlman ("Perlman Decl."), ¶ 4.) Plaintiff argues in reply that the Defendants' opposition, a declaration by Defendants' counsel, does not comply with the Local Civil Rules, and that Defendants have repeatedly flouted the Local Civil Rules throughout the course of this litigation. (ECF No. 45, Plaintiff's Reply in Further Support ("Pl. Reply"), at 4-6.)

The Court agrees with Plaintiff that Defendants' opposition fails to comply with both the Federal Rules of Civil Procedure and the Local Civil Rules. *See* Local Civil Rule 7.1 (providing that legal argument is to be set forth in a memorandum of law, while factual affirmations are to be set forth in affidavits). The Declaration of Defendants' counsel makes legal arguments, attaches documents, fails to cite admissible evidence, and is not based on personal knowledge. (*See generally* Perlman Decl.) Notwithstanding Defendants' failures, even a failure to oppose a motion for summary judgment, as Plaintiff acknowledges, "does not justify the granting of summary judgment" on its own. *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). Rather, the Court must independently determine whether there is a material issue of fact, and whether judgment is warranted as a matter of law based on the undisputed evidence. *Id.* Viewing the evidence in the light most favorable to the non-moving party, the Court finds that summary judgment in favor of Plaintiff is not appropriate on any of Plaintiff's claims.

## I.   FLSA/NYLL Overtime Claims

Plaintiff claims that she was paid $15 per hour for the first forty hours of work each week, and was paid at the same rate for overtime worked in excess of forty hours, in violation of the NYLL and FLSA's requirements that overtime be paid at one and one-half time the normal rate of pay. (Pl. Mem. at 15.) Defendants oppose

14

Plaintiff's claim that she worked in excess of 40 hours per week, and argue that she was not entitled to overtime, as a result. (Perlman Decl. ¶ 8.) The Court concludes that summary judgment is not appropriate because a genuine dispute exists regarding whether Plaintiff worked in excess of 40 hours per week.

Setting aside the issue of whether each of the Defendants in the instant case constituted Plaintiff's employer (which is not at all clear, given Plaintiff brings her claims against all four restaurants owned in part by G. Carreto as well as A. Carreto, M. Rendon, C. Rendon, and G. Carreto), the Court will instead focus only on the issue of the calculation of Plaintiff's hours worked.

### A.   Applicable Law

The FLSA requires employers to pay non-exempt employees at a rate not less than one and one-half times their regular rate of pay for any hours worked over forty within a workweek. 29 U.S.C. § 207(a)(1). The NYLL largely adopts the same standard as the FLSA with respect to overtime compensation and requires a covered employee to "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 12 N.Y.C.R.R. § 142-2.2). To establish an employer's liability for unpaid overtime compensation under the FLSA and NYLL, a plaintiff must prove that she performed work, in excess of 40 hours in a workweek,

15

for which she was not properly compensated, and that her employer had actual or constructive knowledge of that work.  *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011).

### B.  Analysis

The evidence that Plaintiff worked more than forty hours per week consists solely of her testimony.  Plaintiff testified at her deposition that she worked "approximately 60 to 66 hours per week" from "October 2019 through March of 2020."  (Villada Dep. at 31.) Plaintiff further testified that she worked "thirty, thirty-five" hours per week from March 2020 through July 2020 and that she worked between "35 to 45 hours" per week "[a]fter" the pandemic. (*Id.* at 10, 32.)

Defendants' opposition likewise consists *primarily*[5] of the Defendants' own testimony.  Defendant G. Carreto testified that no employees at any of his restaurants, including the Grand Canyon Diner, are paid overtime, because it is policy that they only work 40 hours or less.  (G. Carreto Dep. at 46.)  Defendant M. Rendon also testified that no employees work over forty hours at the Grand Canyon Diner.  (M. Rendon Dep. at 14.)  In further support of Defendants' contention that this policy existed and was enforced,

---

[5] Defendants also produced payroll records, (*see* ECF No. 36-4), showing that Plaintiff worked no more than 40 hours per week from the time of her hiring through December 31, 2020, but Plaintiff appears to argue that those records only reflect the regular pay she received via check, and not the overtime hours she worked and was paid in cash, (Pl. Reply 56.1 ¶ 12).  As such, the payroll records, which only cover a subset of the relevant period, do not alter the Court's analysis.

Plaintiff's co-worker, Defendant Martinez testified at his deposition that he had never worked more than 40 hours in a single week. (Martinez Dep. at 8.) Defendant A. Carreto, who worked part-time at the Grand Canyon Diner, similarly testified that there were no employees at the Grand Canyon Diner who worked over forty hours in a week, although she does not specify the basis for her testimony. (A. Carreto Dep. at 27.)

Plaintiff argues that the admission by Defendants that they did not pay Plaintiff any overtime is sufficient on its own to support a judgment in favor of Plaintiff on this claim. (Pl. Reply at 10.) Plaintiff misstates the law, as the Court cannot conclude that Defendants have violated the FLSA and NYLL merely because the lack of any overtime wages makes it obvious that she would not have been compensated for any overtime she *might* have worked. Rather, to establish liability on an overtime claim, Plaintiff must prove that she *actually* worked in excess of forty hours in a given work week. *See, e.g., Lundy v. Catholic Health Sys. of Long Island*, 711 F.3d 106, 113-14 (2d Cir. 2013).

Plaintiff has failed to show that there is no genuine dispute of material fact regarding whether she worked in excess of 40 hours per week. To the contrary, the conflicting testimony of Plaintiff on the one hand, and Defendants G. Carreto, A. Carreto, M. Rendon, and Martinez on the other, is more than sufficient to create a genuine dispute of material fact as to whether Plaintiff ever

17

worked more than forty hours in a week. *See, e.g.*, *Severino v. 436 W. L.L.C.*, No. 13-CV-3096 (VSB), 2015 WL 12559893, at *7 (S.D.N.Y. Mar. 19, 2015) (finding conflicting testimony sufficient to create a genuine dispute of material fact as to whether plaintiff worked more than forty hours in a week); *Francois v. Mazer*, No. 09-CV-3275, 2012 WL 653886, at *5 (S.D.N.Y. Feb. 28, 2012) (same). Because there is a genuine dispute of material fact as to whether Plaintiff worked overtime, Plaintiff's motion for summary judgment is denied on her overtime claim under the FLSA and NYLL.

## II. Title VII, NYSHRL, and NYCHRL Hostile Work Environment Claims

As mentioned above, Plaintiff also seeks summary judgment on her Title VII, NYSHRL, and NYCHRL claims that she was subjected to a hostile work environment based on her sexual harassment by her coworkers, including Defendants Ojeda and Martinez. (Pl. Mem. at 15-19.)

Title VII prohibits employers from discriminating against any individual "with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). For purposes of Title VII, the term "employer" means "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more

calendar weeks in the current or preceding year, and any agent of such person."  42 U.S.C. § 2000e(b).

As a threshold matter, the undisputed evidence shows that the Grand Canyon Diner only employed three cooks, four dish washers, and four waiters, for a total on 11 employees.  (M. Rendon Dep. at 10-11; G. Carreto Dep. at 23-24.)  When asked at his deposition if the Grand Canyon Diner had "ever had more than 11 employees" in the past six years, Defendant G. Carreto stated that the restaurant had employed "12 [at] the most."  (G. Carreto Dep. at 24.)

The Second Circuit has instructed that a parent company "may be considered the employer of its subsidiary's employees" for Title VII purposes if the two companies are found to represent a "single, integrated enterprise."  *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014) (internal quotation marks and citation omitted).  The question of whether "employees of different employers may be aggregated for purposes of satisfying the fifteen-employee minimum required by Title VII under 42 U.S.C. § 2000e," however, "has never been resolved by [the Second Circuit.]"  *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 197 (2d Cir. 2005).  Even if the Second Circuit had answered the question of whether it was permissible to aggregate employees to reach the 15-employee threshold for Title VII purposes, however, the Court is not persuaded that Plaintiff has shown the Corporate Defendants to be a "single employer."

"A 'single employer' situation exists where two [or more] nominally separate entities are actually part of a single integrated enterprise." *Id.* at 198 (internal quotation marks and citation omitted). "While there are some differences in approach to the single employer issue, the test in this circuit is whether all the circumstances of the case tend to show the absence of an arm's length relationship between two entities." *Westphal v. Catch Ball Prod. Corp.*, 953 F. Supp. 475, 478 (S.D.N.Y. 1997) (internal quotation marks and citation omitted). The Second Circuit has instructed that pertinent factors to consider include "evidence of (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240-41 (2d Cir. 1995).

Here, it is undisputed that G. Carreto has majority ownership of the four restaurants Plaintiff names as the Corporate Defendants, and that he, or his wife, directly manages each of the four restaurants. (G. Carreto Dep. at 11-17.)  It is also undisputed, however, that Plaintiff did not work at any of the restaurants named as Defendants beyond the Grand Canyon Diner, and that employees were not "shared" between locations with the exception of A. Carreto, who worked part time at both Mex Carroll's Diner and the Grand Canyon Diner.  (Def. 56.1 ¶ 3, 18; A. Carreto Dep. at 7-8.)  Plaintiff testified she considered Defendant Tapia,

who was employed as a bar back at the Grand Canyon Bistro, an "owner" of the Grand Canyon Diner, (*see* Villada Dep. at 12), but this is disputed by Defendants M. Rendon, G. Carreto, and Tapia, who testified that only M. Rendon and G. Carreto had an ownership stake in the Grand Canyon Diner, (*see* M. Rendon Dep. at 13; G. Carreto Dep. at 10-11; Tapia Dep. at 20-21).

The present case presents striking similarities to that of *Apolinar v. R.J. 49 REST., LLC*, No. 15-CV-8655 (KBF), 2016 WL 2903278, at *4 (S.D.N.Y. May 18, 2016), in which the district court found several restaurants owned by the same family did not constitute a single enterprise. In *Apolinar*, the plaintiffs sued several corporate entities, each of which did business under the name "Toasties." *Id.* at *1. The businesses had seven active locations, five of which were listed on the same Toasties website home page which described the business as "a family owned and operated New York Gourmet Delicatessen." *Id.* The plaintiffs alleged that, although the businesses were conducted under separate corporate names, all of them operated as a single enterprise by the same family--two twin brothers and their mother. *Id.* at *2. The *Apolinar* plaintiffs further alleged that the family members were in charge of all areas of the Toasties deli enterprise including the hiring and termination of workers, wage determinations, work schedules, type of work assigned, designated work load, and employment policy. *Id.* The court nonetheless found

that those allegations were insufficient to establish that the separate corporations had "an interrelation of operations or centralized control of labor relations with plaintiffs' identified direct corporate employer" sufficient to hold each of them liable under the FLSA. *Id.* at *4. The court concluded that "[a]lthough plaintiffs ha[d] plausibly alleged, based on their allegations relating to the content of the Toasties website, that there existed common ownership and a common purpose," the plaintiffs had failed to "allege that the Moving Corporate Defendants had any sort of direct employer responsibility over them, such as the ability to hire or fire, or set work hours or job responsibilities." *Id.*

So too here, Plaintiff fails to offer any admissible evidence suggesting that any of the Corporate Defendants, aside from the Grand Canyon Diner, had any sort of direct employer responsibility over her. This lack of any direct interaction by Plaintiff with any of the restaurants beyond the Grand Canyon Diner leads the Court to conclude that the Corporate Defendants did not constitute a single integrated enterprise[6], and therefore, even if aggregation were appropriate under Title VII, which is a question the Second Circuit has yet to answer, it would not be appropriate based on

---

[6] The Court notes that its conclusion that the Corporate Defendants do not constitute a single integrated enterprise would also apply to Plaintiff's FLSA and NYLL claims. The Court declines to make findings regarding which, if any, of the Defendants employed Plaintiff for purposes of the FLSA and NYLL, but notes that it is undisputed that Plaintiff only worked for, and was paid by, the Grand Canyon Diner and did not work at any of the other restaurants owned by G. Carreto. (Pl. 56.1 ¶ 6; Villada Dep. at 11.)

the facts of this case. *See Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 587-89 (S.D.N.Y. 2020) (finding the Chinatown location of the Joe Shanghai restaurant chain was not part of a single integrated enterprise when the plaintiffs only worked at the Midtown and Flushing locations, despite shared ownership and a shared website for all locations).

Because Plaintiff has failed to establish that the Grand Canyon Diner employed fifteen employees, the threshold number for application of Title VII, her Title VII claim fails on the merits, and Plaintiff's motion for summary judgment is denied as to her Title VII claim. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006) ("the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue"). The Court is presented with an awkward procedural posture, however, in that the Defendants did not move for summary judgment, or otherwise put Plaintiff on notice that her Title VII claims should be dismissed on the merits due to the lack of the requisite number of employees. *See Nunez v. Goord*, 172 F. Supp. 2d 417, 433 (S.D.N.Y. 2001) ("Regardless of whether or not Defendants made their motion for summary judgment on this particular ground, the Court has the power to dismiss a complaint *sua sponte* for failure to state a claim . . . [but] the party defending a *sua sponte* dismissal ought to have an opportunity to be heard before issuance of the order." (citations omitted)).

Accordingly, the Court will issue a subsequent Order to Show Cause to provide Plaintiff an opportunity to be heard regarding why her Title VII claims should not be dismissed for failure to state a claim, and why the Court should not decline to exercise supplemental jurisdiction over the associated state law claims if Plaintiff's Title VII claims are dismissed.

Having found that Plaintiff's Title VII claim is likely to fail on the merits, and thus Plaintiff is, at the very least, not entitled to summary judgment in her favor, the Court finds that summary judgment is also inappropriate for Plaintiff's remaining hostile workplace claims arising under the NYSHRL and NYCHRL.  "A plaintiff claiming a hostile work environment animated by discrimination in violation of the NYSHRL must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Reichman v. City of New York*, 117 N.Y.S.3d 280, 285 (2d Dep't 2020) (citation omitted).  "To determine whether a hostile work environment exists, a court must consider all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interfered with an employee's work performance." *Id.* (citation omitted).

Moreover, "[u]nder the NYCHRL, a plaintiff claiming a hostile work environment need only demonstrate that he or she was treated less well than other employees because of the relevant characteristic." *Id.* (internal quotation marks and citation omitted). "The conduct alleged must, however, exceed what a reasonable victim of discrimination would consider petty slights and trivial inconveniences, and mere personality conflicts will not suffice to establish a hostile work environment." *Id.* (internal quotation marks and citations omitted).

A genuine dispute of material fact is clearly present in the instant case – the Defendants all flatly denied in their deposition testimony that Plaintiff was subject to any harassment whatsoever, and Plaintiff stated the opposite. (Villada Dep. at 28-29, 37; Martinez Dep. at 21-22; Ojeda Dep. at 19-20.)  In the presence of such a clear dispute about whether the underlying sexual harassment occurred and given the Court's inability to make credibility determinations on a motion for summary judgment, Plaintiff's motion for summary judgment is denied on her NYSHRL and NYCHRL claims. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.").

## III. NYLL Wage Notice Claims

Plaintiff moves for partial summary judgment on her claim that the Defendants failed to provide her with a wage notice within ten business days of her hiring, as required by the NYLL.  (Pl. Mem. at 14.)  Plaintiff claims that summary judgment is appropriate because "Defendant [G.] Carreto testified that he does not provide the [Grand Canyon] Diner or Grand Canyon Bistro employees with a formal, written notice of their wage upon hiring."  (*Id.*) Defendant G. Carreto did indeed make a statement to that effect in his deposition, testifying that while he orally explained the wages that employees would be paid upon their hiring, he did not do so in writing.  (G. Carreto Dep. at 24-25, 29.)

While liability appears to be a fairly straightforward question on Plaintiff's NYLL wage notice claim, this Court's jurisdiction over the claim is not quite as clear.  The Supreme Court has held that "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."  *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).  The Court concludes that it lacks subject-matter jurisdiction over Plaintiff's wage notice and wage statement claims under the NYLL, (*see* SAC ¶¶ 161-163), because Plaintiff has failed to allege facts in the SAC, and failed to present evidence in support of her motion

for summary judgment, to establish her standing to pursue those claims in federal court.

Article III of the federal Constitution restricts federal court power to hearing "cases" and "controversies."  U.S. Const. art. III, § 2, cl. 1.  A "case" or "controversy" cannot exist if the plaintiff lacks a personal stake, or "standing."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  To have Article III standing, the plaintiff must have suffered an injury-in-fact likely caused by the defendant's allegedly unlawful conduct and redressable by a favorable court decision.  *Id.*  The injury must be "concrete and particularized," which means some specific harm to the plaintiff beyond the defendant's technical violation of a statutory mandate.  *Id.* at 440.  Standing is not "dispensed in gross."  *Id.* at 431.  Rather, the plaintiff must show standing separately for each claim he or she presses.  *Id.*

Here, Plaintiff does not link any legally cognizable injury that she personally experienced to Defendants' failure to provide wage statements and wage notices under the NYLL.  Plaintiff instead merely alleges that the Defendants failed to comply with these statutory mandates.  (*See* SAC ¶¶ 161–163.)  Without some tangible downstream harm flowing from the statutory violations, Plaintiff cannot have suffered a concrete injury resulting from Defendants' violations of the NYLL's wage statement and wage notice requirements.  Thus, she lacks Article III standing to pursue those

claims in this Court.  Multiple courts in this district have reached similar results after the Supreme Court's decision in *TransUnion* clarified the requirements to establish standing, beyond bare allegations of statutory violations. *See, e.g.*, *Quieju v. La Jugeria Inc.*, No. 23-CV-264 (BMC), 2023 WL 3073518, at *2 (E.D.N.Y. Apr. 25, 2023); *Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929 (KAM), 2023 WL 2206568, at *6 (E.D.N.Y. Feb. 24, 2023); *Sevilla v. House of Salads One LLC*, 20-CV-6072 (PKC), 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022).

Nonetheless, the Second Circuit has instructed district courts to provide an "adversely affected party with notice and an opportunity to be heard" before dismissing an action *sua sponte* for lack of subject matter jurisdiction. *McGinty v. New York*, 251 F.3d 84, 90 (2d Cir. 2001).  As a result, the Court will deny Plaintiff's motion for summary judgment on the wage notice claim and will issue a subsequent Order to Show Cause to provide Plaintiff an opportunity notice and an opportunity to be heard regarding the Court's findings on the lack of subject matter jurisdiction.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Partial Summary Judgment is denied in its entirety.  Genuine disputes of material fact prevent the entry of summary judgment in favor of Plaintiff on the FLSA, NYLL, NYSHRL, and NYCHRL claims; Plaintiff

has failed to offer evidence to show that the Grand Canyon Diner is an "employer" for purposes of Title VII; and Plaintiff has failed to show a concrete injury to provide her with Article III standing for her wage notice and wage statement claims.

The Court will subsequently issue an Order to Show Cause directing Plaintiff to respond and state why (1) Plaintiff's Title VII Claims should not be dismissed on the merits for failing to establish that the Grand Canyon Diner employed the threshold number of employees for application of Title VII; (2) the Court should not decline to exercise supplemental jurisdiction over Plaintiff's remaining NYSHRL, NYCHRL and state common law claims in the absence of Plaintiff's Title VII claims; (3) Plaintiff's NYLL Wage Notice and Wage Statement Claims should not be dismissed for lack of Article III standing; and (4) why Defendants Ojeda and Martinez should not be dismissed as parties if the aforementioned state law claims are dismissed.

**SO ORDERED.**

Dated:    August 19, 2024
          Brooklyn, New York

_____
**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York