UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------x

22-CV-2782(RML)

MARIA VILLADA,

Plaintiff,

-versus-

GRAND CANYON DINER, ET AL.,

Defendants.

------------------------------x

United States Courthouse
Brooklyn, New York

March 11, 2025
9:30 a.m.

TRANSCRIPT OF CIVIL CAUSE FOR JURY TRIAL
BEFORE THE HONORABLE ROBERT M. LEVY
UNITED STATES MAGISTRATE JUDGE
BEFORE A JURY

APPEARANCES

For the Plaintiff: PERVEZ & REHMAN
BY: ANEEBA REHMAN, ESQ.
NADIA M. PERVEZ, ESQ.

For the Defendants: DAVID H. PERLMAN, ESQ.
BY: DAVID PERLMAN, ESQ.

Also Present: CHRISTINE POTTER, Spanish Interpreter

Court Reporter: Rivka Teich, CSR, RPR, RMR, FCRR
Phone: 718-613-2268
Email: RivkaTeich@gmail.com

Proceedings recorded by mechanical stenography. Transcript produced by computer-aided transcription.

(In open court.)

THE COURTROOM DEPUTY: All rise.

THE COURT: Before we get started, I'd like to propose the idea that you may all want to settle this case because there is no guarantee who is going to win and who will lose, and the stakes for everyone are somewhat high.

Can everyone understand or do we need an interpreter?

I have no idea who will win or lose this case. I'm more than happy to continue with the trial all the way through but, I want to give you all a pause to think about where you are. I'm not going to make any comments on who is winning or losing the case or what the jury is thinking.

For the plaintiff, who has the burden of proof, if you lose you get nothing. If you win you might get anything from somewhat to a large amount, it's unclear.

For defendants, the best the defendants can do is to win the case, which means that you end up paying your attorney's fees all the way through the end of the case. The worse that could happen is you lose the case, you pay your attorney's fees, you'll end up paying the other side's attorney's fees, and you'll pay whatever damages there are including a penalty called liquidated damages. So the stakes are high for everyone.

If anyone would like to discuss settlement, I can

provide a place for you to do that. You need to let me know if that is something you are interested to do. Okay. We're going to take two minutes before we start for the parties to sit and talk to each other. We have conference rooms in the back.

MR. PERLMAN: We'll go into the conference room.

THE COURT: One group can stay here. Maybe because the plaintiff is a smaller group, you can go out in the conference room. Let's have the defendants stay here, there are more of them.

MR. PERLMAN: Okay, Judge.

(Brief pause.)

THE COURT: Mr. Perlman, what is it that you would like me to do?

MR. PERLMAN: I would like a figure from them.

THE COURT: And you're comfortable with having me speak to them ex parte asking for a demand?

MR. PERLMAN: Yes, I'm comfortable. I make a living.

(Brief pause.)

THE COURT: They have a deman, only for this case not for the state case, 95.

MR. PERLMAN: Okay. I'll talk to them right now.

(Brief pause.)

THE COURT: Do you need more time? Should I step

out?

MR. PERLMAN: About two or three more minutes.

THE COURT: Have you explained joint and several liabilities?

MR. PERLMAN: Absolutely, we discussed it, yes.

(Brief pause.)

THE COURT: Yes.

MR. PERLMAN: We have an offer, fifty to 60.

THE COURT: Can I quote you exactly?

MR. PERLMAN: Sixty you can go to.

THE COURT: Okay.

(Brief pause.)

THE COURT: They have a response, 90. I'll step out.

MR. PERLMAN: Yes, I need more time.

(Brief pause.)

MR. PERLMAN: Okay, 75, that's it though. Don't come back. Seventy-five or we continue with trial.

THE COURT: I'll quote you.

(Brief pause.)

THE COURT: They are willing to take 85 but no payment plan, just one payment.

MR. PERLMAN: We understand that. That's how we offered the 75.

THE COURT: They will do 85. Remember, if they win,

you pay attorneys fees, the costs, and your attorney's fees and they get the damages.

MR. PERLMAN: I told them.

If you take her 20 hours which she worked every week she got shorted, that is 16,000. Double it under the law, that's 32,000. That's a lot of money between 75 and 32. Then you have the other expenses, the commission, her fees, I don't see it coming to that, I see it coming to 75 and we're stretching.

You want to go to 80?

MR. RENDON: Let's finish it off, if they take will 80.

MR. PERLMAN: We'll split it and say 80. I'm working with you.

THE COURT: I'm not here to decide either way.

MR. PERLMAN: I told them that already. I told them you're too soft.

THE COURT: I'm happy to have a settlement.

MR. PERLMAN: When I represented federal judges it was like that; Korman I represented, Trager I represented.

THE COURT: For what?

MR. PERLMAN: In cases.

THE COURT: In lawsuits?

MR. PERLMAN: I go back with Trager, '65, '66, we worked together we were close since then. Korman, law school.

And there was a black judge who came from Syracuse, she was our tenant on Pierrepont Street.

THE COURT: I remember her.

MR. PERLMAN: She didn't last long. She came from the appellate division from the second department.

THE COURT: So 80?

MR. PERLMAN: Yes, 80, one-shot deal, no payment plan.

(Brief pause.)

THE COURT: They'll take it. And we'll put it on the record.

(Brief pause.)

(Plaintiffs return to courtroom.)

THE COURT: $80,000. And how soon would be willing to pay that?

MR. PERLMAN: Thirty days, that's what it says.

THE COURT: Do you need a written agreement?

MR. PERLMAN: An oral stipulation is good enough.

THE COURT: Payment within 30 days good for you?

MS. REHMAN: No.

MR. PERLMAN: That's what the schedule says. If you don't get 30 days, you get more money.

THE COURT: What about 15 days?

MS. REHMAN: From today?

THE COURT: Fifteen days from today.

MR. PERLMAN: Okay, 15 days.

THE COURT: Any other terms we need to put on the record?

MS. REHMAN: No.

MS. PERVEZ: I guess we didn't talk about how it's going to be allocated.

THE COURT: We can put that on the record.

MS. PERVEZ: In terms of the payment to plaintiff, W2 versus 1099. I don't think there were deductions from her pay. Can we just step out to discuss the 1099 versus the W2 with the client?

THE COURT: Okay.

(Brief pause.)

MS. PERVEZ: For the allocation we're going to ask for one-third of the amount going to plaintiff as wages, and two-thirds as W9 -- 1099, for the liquidated damages statutory violations.

THE COURT: Does that work for the defendants?

MR. PERLMAN: Talk to me, what?

MS. PERVEZ: For the amount that is going directly to plaintiff we were just discussing the allocation what part of that would go on payroll and what part would be liquidated damages. We're proposing one-third on payroll and two-thirds at a 1099.

MR. PERLMAN: Yes, sure, no problem.

MS. PERVEZ: That's just for plaintiff's portion.

THE COURT: Let's go off the record.

(Discussion held off the record.)

THE COURT: Back on the record.

For the last hour and-a-half the parties have been engaged in negotiations to settle this case. They have reached an agreement. All the terms and conditions have been discussed with each other and before the Court. I'm going to ask plaintiff's counsel to place them on the record at this time.

MS. REHMAN: Good morning, your Honor. Aneeba Rehman from Pervez Rehman PC.

Plaintiff's counsel confirms that plaintiff has accepted a settlement on this case only in relation to her wage and hour claims in this case only.

The settlement amount is going total $80,000 to be paid two weeks from today by defendants. We would ask that the funds be certified checks.

Your Honor, the breakdown of the settlement includes expenses and allocation to the plaintiff and attorneys fees. The expenses total $13,231. The expenses are as follows.

Interpreter trial for the trial was $2,250. Transcripts for the depositions, total $27,503. The interpreters for depositions, total $893. The service fees total $873. An interpreter who was used for the case totals

$5,600. The filing fee was $402. Parking and travel, $210. Copy and binders, $250. Totaling 13,231 to reimburse plaintiff's counsel for expenses to be paid to Pervez and Rehman PC.

Attorneys fees to be paid to per Pervez and Rehman PC total, $36,769.

The amount allotted to plaintiff includes $30,000. $10,000 of this amount to be paid as wages, and $20,000 to be paid as 1099. We ask that all the checks be certified checks. And again, to confirm, this is just a release on this federal action, the trial here today, and the case only before, your Honor. There would be no confidentiality and no non-mutual disparagement agreements. The checks shall be mailed to Pervez and Rehman PC, 6268 Jericho Turnpike, Suite 8, Commack, New York, 11725.

THE COURT: I'm going to ask the plaintiff to state her name for the record.

MR. PERLMAN: The only change I would have in the stipulation is certified or bank check, because some banks don't give certified checks any more, they want bank checks.

MS. REHMAN: Agreed.

THE PLAINTIFF: Marie Teresa Martinez Villada.

THE COURT: We have an interpreter here with us.

THE INTERPRETER: Yes, your Honor.

THE COURT: Say your name again.

THE INTERPRETER: Christine Potter certified Spanish interpreter.

THE COURT: Previously sworn?

THE INTERPRETER: Yes, your Honor.

THE COURT: Speaking to the plaintiff. Did you hear all the terms and conditions of the settlement?

THE PLAINTIFF: Yes, I heard it all.

THE COURT: And were they interpreted for you in Spanish?

THE PLAINTIFF: Yes, it was interpreted for me.

THE COURT: Did you discuss them with your lawyer?

THE PLAINTIFF: Yes, I spoke about it.

THE COURT: Are you satisfied with the settlement?

THE PLAINTIFF: Yes, very satisfied.

THE COURT: Do you understand all the terms and conditions?

THE PLAINTIFF: Yes, I understand.

THE COURT: Do you understand that by agreeing to this settlement you're releasing any claims against these defendants in this litigation only?

THE PLAINTIFF: Yes, I agree, I understand.

THE COURT: Do you have any questions at all about the settlement agreement?

THE PLAINTIFF: No, no questions.

THE COURT: Are you agreeing to it voluntarily?

THE PLAINTIFF: Yes, I'm agreeing voluntarily.

THE COURT: Anyone forced you or threatened you or made you any promises to agree to the settlement against your will?

THE PLAINTIFF: No one.

THE COURT: Is there anything else you would like to add at this point?

THE PLAINTIFF: No that's it.

THE COURT: Can I hear from defendants' counsel. Mr. Perlman, do you agree to all the terms and conditions of the settlement?

MR. PERLMAN: Yes.

THE COURT: Have you discussed it with all your clients?

MR. PERLMAN: Yes.

THE COURT: I'm going to have each one of the defendants say your name for the record.

MR. CARRETO: Gonzalo Carreto.

THE DEFENDANTS: Cesar Rendon Impara.

MS. RENDON: Marinella Rendon.

MS. CARRETO: Andrea Carreto.

MR. TAPIA: Alfredo Tapia.

THE COURT: Does anyone one of you need an interpreter?

Do you each understand all the material terms and

conditions of the settlement?

THE DEFENDANTS: (Collectively) Yes.

THE COURT: Have you discussed them with your lawyer?

THE DEFENDANTS: (Collectively) Yes.

THE COURT: Was he able to explain and answer all of your questions?

THE DEFENDANTS: (Collectively) Yes.

THE COURT: Is there anything you do not understand about the agreement?

MR. RENDON: We understand everything.

THE COURT: Are you all authorized to enter into this settlement on behalf of yourselves and on behalf of the corporate defendant?

THE DEFENDANTS: (Collectively) Yes.

THE COURT: Are you each signing and agreeing to this settlement voluntarily?

THE DEFENDANTS: (Collectively) Yes.

THE COURT: Has anybody forced you or threatened you to make you agree to the settlement?

THE DEFENDANTS: (Collectively) No.

THE COURT: Does anyone have any questions at all?

THE DEFENDANTS: (Collectively)No.

THE COURT: Anyone who is not agreeing to this settlement?

THE DEFENDANTS: (Collectively) No.

MR. RENDON: We all agree.

THE COURT: We're having a Cheeks hearing at this time as well. Based on my observation and participation in the settlement process, I'm convinced that the agreement was negotiated at arms-length, it is fair and voluntary. There are no prohibited provisions to it. So I, therefore, approve the settlement pursuant to Cheeks.

Pursuant to Second Circuit law, when the parties place a settlement agreement on the record before a Court and include all the material terms and conditions, that agreement becomes binding even in the absence of a written settlement agreement.

Speaking to counsel, do you each agree that this agreement is now binding on all the parties?

MS. REHMAN: On behalf of plaintiff, yes.

MR. PERLMAN: On behalf of defendant, yes.

THE COURT: Do you intend to have a written settlement agreement or is that not necessary?

MS. REHMAN: That is not necessary.

MR. PERLMAN: I'll agree, not necessary.

THE COURT: Is there anything else from the plaintiffs?

MS. REHMAN: Yes, your Honor. We just want to confirm that your Honor will retain jurisdiction for

enforcement purposes. And we can write to the Court upon receipt of the payments and that the payments have been cleared, and file that via ECF.

And the other note that I just wanted to make so that defendants have it for the purposes of the record, I can spell out the name of plaintiff for the purposes of her check so there is no issues there. It is Maria Teresa Martinez, M-A-R-I-A, T-E-R-E-S-A, M-A-R-T-I-N-E-Z. That's how the check should be made payable to for her payments.

THE COURT: Defense counsel?

MR. PERLMAN: No problem.

THE COURT: And the Court will retain jurisdiction to enforce the settlement agreement.

Before I ask the jury to come in, is there anything else from the plaintiff?

MS. REHMAN: Nothing from us, your Honor.

THE COURT: From defendants?

MR. PERLMAN: Nothing.

THE COURT: I'll call the jurors in.

This settlement is not confidential, as you mentioned. If you wish to discuss the case with the jury, you're free to do that.

(Jury enters the courtroom.)

THE COURT: Please be seated. Good morning and thank you for being here today.

While you were in the jury room the parties had a settlement negotiation and they reached settlement. It's because of your presence here that they reached a settlement. They were unable to reach one before the trial started. So I want to thank you for your service and for your contribution to what I believe is a fair settlement in this case. I'll thank you again for your service and excuse you at this point.

You're free to talk to the lawyers about the case or not to. It's up to.

Anybody on the jury have a question, not about the settlement, but about your jury service?

THE JURY: (Collectively)No.

THE COURT: You can go down to the second floor and tell them that you participated in a trial and trial was concluded through settlement. Thank you again for your service.

(Jury exits the courtroom.)

THE COURT: Anything else?

MS. REHMAN: No. We were hoping to catch the jurors, we're going to run out.

(Whereupon, the matter was concluded.)

* * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/ Rivka Teich*
Rivka Teich, CSR RPR RMR FCRR
Official Court Reporter
Eastern District of New York